On behalf of the Appellants, Mr. Mark Berger and on behalf of the Appellant, Mr. Richard Hussle. Mr. Chairman, are you both ready to proceed? And you may proceed when you're ready. May it please the Court. Your Honors, Counsel, good morning. My name is Mark Byrd and I represent the plaintiff taxpayers in this case, Jerry Byrd and Mary Lou Byrd. I will be advancing a couple of arguments this morning, one related to the constitutionality of the Illinois Income Taxation Scheme with respect to not allowing taxpayers who are engaged in the activity of gambling to deduct losses from winnings in the results that we see on the facts of this case. But before I do that, I want to start with an issue that I believe this argument is best heard first because, as we all know, that from numerous precedents, the Court is required to try to strive to avoid declaring an act unconstitutional if the case can be judiciously and reasonably resolved on any other grounds. So my first argument is going to be that both the Illinois Department of Revenue in the administrative hearing as well as the Circuit Court on Administrative Review clearly erred on the facts of this case in deciding that the taxpayers do not qualify as individuals engaged in gambling as a trade or business. The primary case that I believe controls this issue is the U.S. Supreme Court case of Grossinger, which is filed at 480 U.S. 23, a case from 1987. In there, although the Grossinger Court does not articulate a bright-line test, the issue is essentially the same that's before this court. An individual who had engaged in the activity of betting at dog tracks regularly and persistently did not file returns declaring income from that activity or losses declared from that activity. The court was faced with determining whether, under the federal income tax laws, this individual qualified as having engaged in the activity of dog track betting as a trade or business. And in holding that Mr. Grossinger did, in fact, qualify as an individual engaged in gambling as a trade or business, the court at pages 35 and 36 stated that when the activity is pursued full-time in good faith with regularity to the production of income for a livelihood and is not a mere hobby, it is a trade or business within the meaning of the statutes with which we are concerned. Now, the Grossinger Court did not establish this as a bright-line rule and, in fact, suggested that reviewing courts must engage in a de novo review of the facts to determine if, on a particular set of circumstances, this person or these people, in this case, engaged in the activity as a trade or business. The lists of things that are discussed in Grossinger are also not an exhaustive list. Essentially, the court is required to look at the circumstances to determine whether or not the activity was pursued as a passing fancy or an occasional bet for amusement, and that was what the Grossinger Court discussed also at pages 35 and 36, indicating that Mr. Grossinger, in this case, did engage in constant and large-scale effort on his part. Skill was required and was applied. He did what he did for a livelihood, though with less than successful result. One of the arguments that the Department makes is that these taxpayers don't qualify as having engaged in the activity as a trade or business because they lost. That was the same set of facts in Grossinger. Mr. Grossinger had less than successful results. That does not make it any less of a trade or business. Didn't Mr. Grossinger testify that it was a hobby? I don't recall him. Do you mean Grossinger or Mr. Burr? No, Mr. Burr. Mr. Burr testified. No, what Mr. Burr testified to, Your Honor, and the Department seems to hone in on this, is that he said it was an activity that he and his wife enjoyed. And certainly enjoying an activity or deriving recreation from it doesn't make it any less of a trade or business. I enjoy being here this morning. I enjoy practicing law, but it is not a hobby. But unlike Mr. Grossinger, Mr. Burr did not devote his full time to gambling. Well, that depends on how you define full time, Your Honor. And if you look at... Well, how many days a week did he go to the casinos? In the four-year period at the Grand Victoria, which is the only one of the two main casinos, we've got the Grand Victoria, which tracks the number of times that you are present. And then you've got the Hollywood Casino, which does it differently and just gives you a monthly summary. But if you look at the amounts that were cycled through these machines, it shows an extreme amount of time dedicated. 269 trips to the Grand Victoria Casino in the four-year period. During that time, over $4.7 million were pumped into these. That takes a lot of time. And similarly, at the same time, the Hollywood Casino, though it doesn't track number of times you're there, $4.7 million pumped into those machines. So total, that's $9.4 million cycled through these machines on at least... And what I argue, because the Hollywood doesn't keep track of the number of times you're there, you can compare the numbers and infer that it's a similar amount of time to what's tracked at the Grand Victoria. If that holds true, then you have over 530 visits in a four-year period to one of these two casinos. That certainly does not constitute a hobby or a passing fancy, as it's discussed in Grotzinger. But rather, somebody who, again, at page 35, Grotzinger notes, taxpayer must be involved in the activity with continuity. We certainly seem to have that here, or regularity. And the taxpayer's primary purpose for engaging in the activity must be for income or profit. Now, anybody, and I think it's a reasonable inference that the Court can draw and that the lower courts fail to draw, is that anybody that is going to go and cycle through... And Mr. Berg did testify that there was always a profit motive here. You don't gamble $9.4 million through a machine without an expectation of making a profit. It doesn't control the profit motive, because if I go buy a scratch ticket, I hope to make a profit from the Illinois lottery. That doesn't mean that my scratch ticket puts me in a trader business. It's the continuity, the regularity, and the amount of time that is invested into it that plays a big role. Can you be a professional gambler, and your sole source of income is gambling, and you go once a month to Grand Victoria, and at the end of the year, you make some money or you lose some money? And in contrast, you have a situation where somebody gambles that much and calls himself a professional gambler. But twice a week during the course of a year, he's an illustrator, and he makes X number of income from that. Can a person have two full-time jobs, one being a professional gambler and another, so-called full-time jobs, and another being a painter? I believe, Your Honor, that they could, though, to make the argument under the Grosslinger analysis for an individual. Did you make that argument? I do, with respect to these gamblers and these taxpayers, based on the amount of trips and the amount of money that is put through these machines and the time it would take to do that. It would be far more difficult to make that argument successfully if the birds had gone to the boat once a month, as Your Honor put it in the Hyde Protocol. But certainly, one is not prohibitive from having multiple incomes. And what's really important to note, and seemed to be ignored by both— I'm not talking about multiple incomes. I'm talking about— —or multiple careers, or multiple trades or businesses. You see it? Jobs or businesses. Sometimes when people—and you have to also take into account that a lot of things that exist today didn't exist when Grosslinger was decided. For example, the Internet. People can have full-time jobs and still engage in an antiquing business on the side through eBay or through Craigslist, where items are purchased and sold for profit, and that would constitute a business. But what seemed to be ignored at the lower levels in this case is that one of the plaintiffs, Mary Lou Bird, had no career. She was just a homemaker, and I don't mean to say just a homemaker. With the IRS, if you use my example, professional gambler, one day a week per year, and then an illustrator, two days a week for the full year, and you fill out your income tax return. In arriving at your adjusted gross income under the federal return, you can show your total income and deduct your total expenses gambling. Could you do that showing that on occupation you put professional gambler slash illustrator? I believe you could. It doesn't mean it will withstand scrutiny under the Grosslinger analysis because you would have gone to the boat 12 times in a year. I suppose it would depend on how long you stayed on those 12 occasions. If you're there for an hour or so, you have a lesser argument than if you're there for 15 hours or the amount of money that's cycled through. It doesn't equate to the type of explosive numbers that we see on the record in this case. But to get to your honest question, yes, I believe you could claim that reasonably. There's nothing in Grosslinger that suggests that one cannot have more than one or be engaged in more than one trade or business at a time. And again, one taxpayer had no trade or business outside of her role as a homemaker, and her numbers are pretty high as well. When you put them both together, that's where you get the $9.4 million cycled through on several hundred trips during the period of the indictment. The government, in suggesting that Mr. Byrd and Mrs. Byrd should not be considered professional gamblers, focused on the fact that they didn't file their federal returns as if they were professional gamblers. Neither did Grosslinger, but it didn't prohibit them from being classified as that when the Supreme Court made the decision. In addition, they indict this effort to fall into that category based on the idea, and I believe that's put into a government's brief, I believe, at page 39, where they suggest that the Byrds did not keep records as if they were operating as a trade or business. However, the record completely goes against that argument. We have over a 1,200-page record, over 950 pages of which were the documents and records that the Byrds did in fact keep in order to sustain and be able to meet their burden, showing that their losses had exceeded their gains. We have just about all of the ATM receipts, the marker receipts, that were all introduced in 950-some pages of documents. And having been the one that assembled those ATM receipts, I can completely state that each page has at least six to eight ATM receipts on it. So we're talking about thousands of pages of ATM receipts, marker receipts, and the most important thing is the electronic printouts that were kept from each of the casinos that track this. One of the issues that the department, the ALJ in that case, discounted those records, relying on a case of Meyer versus Commissioner. But the letters that were submitted in this case differ from the letters that were submitted in the context of the Meyer case, because the letters in this case say that these results do not show accurate results for all gambling activities because roulette wheels, blackjack are not tracked the same way. But with these electronic cards and the slot machine being essentially a computer, the accuracy is tracked in this case. And interestingly, both parties at the administrative hearing stipulated at C-242-52 to the accuracy and the authenticity of those records. What was the fact finding of the administrative body? Well, the administrative body found... Hobby or full time? Pardon me? Hobby or full time? They found that it was a hobby. What's our standard of review with respect to the fact finding of the administrative body? De novo review with clear error is my belief on the issue of the findings of fact issued by the administrative law judge. And you believe that it's shown clear error? I do. Clear error, by definition, is being left with a firm belief that a mistake has been made. And on the facts of this record and the application of the Grubzinger factors, I believe that that would be the only reasonable conclusion, that the lower court made a mistake in determining that these taxpayers do not qualify as being engaged in a trade or a business. The fact that they kept over 950 records to demonstrate the very point that their losses exceeded their gains speaks volumes to what they believed they needed to do and to keep their records in order to make... That's not something that somebody engaged in gambling as an occasional passing fancy or a hobby is going to do, is keep all of those records to prove both at the federal level and at the state level that the losses exceeded the gains. With respect to the second argument, Your Honors, with respect to the constitutionality, we've launched challenges to this. My best argument, I believe, is that it, as applied to these taxpayers, would be constitutional. I cited to the Aaron Gold case, the Geisha Cafe case, that in order to comport with due process, the taxation scheme has to be reasonable. The deductions have to be reasonable. And what we have here is an awkward result in the taxpayers who lost over $200,000 in this activity over a four-year period are now taxed $60,000 plus interest on those losses. Ironically, when we submitted the documents in discovery that showed the actual coin-in and coin-out, amended notices of deficiency were filed suggesting these taxpayers failed to declare over a half a million dollars in income and had tax liability exceeding $400,000 on the $200,000 they lost. Now, the way that they do this is by... and it is the law, I don't dispute it, that is currently the state of the law that every coin that comes out of that machine, every free ticket you get when you scratch your lottery ticket is an income from which you are required to pay 3% under the Illinois Income Tax Act. You can deduct your capital aspect of it. Put in $100, $100 as capital to get $200, $100 as income. That's correct. You can deduct that at the federal level and at the state level. However, at the federal level, you are able to deduct all of your losses from your gains. And in Illinois, you're not able to do that. So what we have is a situation before the court today where on paper and stipulated to authenticity, these taxpayers document over $200,000 in losses and had the amended notices of deficiency withstood the ALJ's ruling, would have over $400,000 in losses... I'm sorry, in tax due and owing plus interest on an activity where they lost $200,000. It's our position that that is arbitrary, discriminatory, would not satisfy the rational basis test set forth, and I assume that meant I'm out of time.  Sure. Let me refresh my memory regarding the facts. Did not the facts show that Mr. Byrne was an illustrator and had an illustration business? He was earning approximately $250,000 a year in graphic arts. Yeah, he worked every day at that business, full time during the day, except when they took a vacation to Vegas or something like that. And the gambling was done essentially weekends and evenings. And sometimes during the day if he didn't have to be at work that day, but yes. But the weight of the evidence... The line is short for him. I read that evidence. He's working every day like you and I would be working every day if we were an illustrator. Correct. You know, we want to take a day off, we take a day off. Right, and he would go on evenings and weekends, and notwithstanding that income, just for the year 2000, just at the Hollywood Casino, he personally cycled over $1.9 million through those machines. And my point is, that takes some time and takes some effort. It's not a passing fancy or a hobby. It's amazing to me how you do it. It takes a lot of time and a willingness to sit at the machine for that length of time. Always, however, with the profit motive driving the activity. Well, it's also the excitement, isn't it? That plays a part of it. I mean, is it really what you're talking about? I mean, Mr. Bird and his wife enjoy this activity immensely, and they're drawn to the casinos, and they spend a lot of time there. Absolutely, but that would not disqualify it from being a trade or business. Baseball players, basketball players, they love what they do, presumably. I enjoy being here. I like being a lawyer. It's still not my hobby, and that's my point. Under a reasonable application of grossing, I believe that we have met that standard, and it was clear for the lower courts to find that they are not. Thank you. Thank you. May it please the court. I'm Assistant Attorney General Richard Huzzack, counsel for Brian Hamer, the director of the Department of Revenue, and the Department of Revenue as Defendant Zappolese in this case, and I urge the court to affirm their decision, which it is reviewing, upholding the notices of deficiency for unpaid Illinois state income taxes relating to the gambling activities of the plaintiff, Zappolese, in this case. Could you pull out the microphone a little closer, please? I've had this difficulty, I think, the last time I was here, too, and I went to listen to the tape afterwards, and I wasn't mumbling, but I wasn't very loud either. I urge the court to affirm that decision because the plaintiffs have not shown that the director, as the administrative decision-maker in this case, either misapplied the statute or made findings of fact that are clearly erroneous or contrary to the manifest weight of the evidence or that any of the relevant statutes is unconstitutional either on its face or as applied to these plaintiffs. At the heart of this case is the discrepancy between federal tax law and Illinois tax law regarding the reporting of income from recreational gambling activities, and the difference is it has to do with sort of above-the-line and so-called below-the-line treatment of expenses, which would include deductions that somebody would seek to take from an activity. And underlying that distinction is sort of the core principle in federal income tax law that's adopted in state law that considers certain income to be related to the conduct of a trade or business and other income to be related to hobbies and other recreational activities. And this distinction is relevant because the Illinois Income Tax Act says that to report your income for purposes of Illinois taxation subject only to a few statutory deductions, you take your adjusted gross income from your federal tax return and that's what you carry over to your Illinois income tax return and essentially pay 3%. You don't get special treatment for capital gains. You don't get special treatment for dividends. You take that adjusted gross income and you pay 3% on it, basically. Now, the difference arises from the fact that under the federal income tax laws, before you compute your adjusted gross income, if you're engaged in a trade or business, you get to deduct your expenses related to that trade or business above the line. Let me ask, right at this point, how do you address the argument about having two trades or businesses? I think it's possible. I don't think that's what happened here in the director's finding that the birds were engaged in an expensive recreational hobby is well supported by the record and cannot be reversed under the appropriate standard of review either. How do you address the facts as to the amount of money and the amount of time that apparently is relatively undisputed on the record and determine that that time, that money equals a hobby? I don't think that there's any single factor in the analysis that's controlling. It is a multi-factor totality of the circumstances test, which is one of the reasons that the standard of review is significantly deferential, although it's not just total deference. Do you agree with me if you're a multimillionaire and you've spent that amount of time, it could be more easily described as a hobby, but if you're in the income situation that is reflected by the facts of this case, and I'm talking about, my memory is that income from his illustration business was in the $200,000 graph, then is it a hobby when you, is it more a hobby or is it more a business when you spend the time and effort to try to make additional income or gain? I think that engaging in gambling as an exclusive, virtually full-time activity would tilt the scales towards a finding that the person doing that was engaged in the trade or business of gambling, was a professional gambler. But again, there's not one factor that's dispositive. When I say tip the scales, it's really probably one of these called or mobile type things where each of the factors comes into play and they can balance accordingly, and you get a pretty good intuitive sense after looking at the facts whether you think the person is engaged in a trade or business or is in fact just engaged in a hobby, perhaps an expensive one. The fact that the person is a multimillionaire and is the CEO of some large corporation but loves to go to the track and spend time gambling probably would weigh against a finding that the person was engaged in professional gambling activities. I remember seeing Johnny Morris out at the track. What's the dispositive factor there? Is the fact that he has a different job or that he makes a lot more money, presumably, from the CEO job? I wouldn't say that there's any dispositive factor, and I would eschew the notion that there is a simple litmus test-based one-factor analysis. But with respect to the ingredients that you put your finger on, Your Honor, I believe that the fact that the person engaged in this activity is engaged in another income-making activity that's a regular job, goes to that job on a regular basis, five days a week or approximately that or more, and makes substantial income from that would tend to weigh against but not categorically exclude the possibility that the gambling was recreational. Well, if somebody has a job, let's say they worked nights and went to the boats all day and worked nights at a different job, does that change your position? It would be a factor that would weigh in the analysis. There are a lot of people that moonlight to survive or to get ahead. There's nothing wrong with that. But the finder of fact, and in this case the finder of fact in the first instance was the director, weighed the relevant factors and concluded, first, that it was not a relevant issue because he was bound by constitutional statutes that said, when you declare your income as recreational income on your federal income tax returns, that controls the issue. And there's an Illinois constitutional provision that says that's how the statutes can be constructed. The statutes are so constructed. The relevant provisions of the Income Tax Act, sections 203 and 403, make it clear. You can't cherry pick how you treat your income and expenses for federal income tax purposes and how you treat them for state income tax purposes. In this case, the Byrds declared themselves on their federal income tax returns as not being professional gamblers. All of their deductions were taken below the line. They didn't fill out a schedule for business-related gambling income. They did none of the things that corresponded to what was necessary to be able to take that adjusted gross income figure from their federal income tax return and carry it over to their state income tax return and have their deductions be above the line for federal income tax purposes and therefore permissible for computing what their Illinois income taxes are. If I understand you correctly, had they filed a federal return differently and suggested that they had two full-time jobs, or in the case of Mrs. Byrd, one full-time job as a gambler, here's my income from gambling, here's my deductions, that computed into their adjusted gross income, and that would translate over, there would be no further inquiry made by Illinois Department of Revenue? That's a nice question. And I want to answer this very precisely, and I believe I have a footnote in my brief that's devoted to this. It's not exactly a perfect two-way street here, if I can use that metaphor, but the standard is that the taxpayer cannot depart from what they've done on their federal income tax returns. There is room, however, in the statute for the Department of Revenue, in extreme cases, to say that what you reported was not the amount that was properly reportable. And in that situation, the director, but not the taxpayer, has the ability to say that there should be a different number reported on your state income tax return for state income tax purposes. If, however, there has been a dispute with the IRS, and the service makes an adjudication or a final determination with respect to an issue that isn't common to state income tax returns, then that is controlling by Illinois statute, and the Department of Revenue has no authority to deviate from a finding by the statute. So there is a well-nigh total, but perhaps not absolutely total, correspondence between the treatment of the federal income tax return for the taxpayer in question and their state income tax returns. So you're relying not so much on any testimony that was taken with respect to whether this was a hobby or income-generating job, but you're looking at what was written on the federal return. Our primary argument is, yes, that the taxpayers can't have taken one position on their federal income tax returns and then repudiated for their Illinois income tax returns. We argue in the alternative that if the court thinks that there's a factual issue that warrants review here, that under the appropriate standard of review, the director's finding that they were, in fact, recreational gamblers. They said they did it for amusement, the record-keeping was a shopping bag, that type of thing. He had a full-time job making a quarter of a million dollars a year, three out of the four years in question, and over $200,000 the fourth year. They went on the weekends. They'd occasionally go to Las Vegas. They did none of the things that would be the hallmarks of a person truly engaged in the trade or business of gambling because, for relevant purposes, it's not enough just to sort of have a shopping bag and say, for example, well, all my ATM receipts here corresponded to money that I spent on wagers. How did you pay for food? How did you eat? Where did you stay? How did you pay for that? Well, none of this income related to that. That was testimony that the administrative law judge or the director wasn't required to credit as being perfect proof that they had absolutely valid records, which would be consistent with the type of record-keeping for somebody engaged in a trade or business. Didn't the administrative law judge consider that testimony, though, in making his decision that it was the birds were operating a hobby record in the business? Yes, along with the way that they treated it on their federal income tax returns. That wasn't only the federal tax return that the administrative law judge used in making his decision. They start with that, and the administrative law judge, in fact, concluded that the flurry of records that was produced weren't sufficiently compelling to warrant a departure either way from what was the treatment put on the federal income tax returns. The department here, after additional discovery, said our original notices of deficiency were not large enough. We're willing to increase those. The administrative law judge and the director rejected those admitted notices of deficiency. There's been no cross-appeal, so there really isn't an issue related to those findings, but the ALJ said, you know, essentially neither of you has established any justification based upon compelling record-keeping to depart from the income numbers that were reported on the federal income tax return, which, in any event, I have to follow based upon the relevant Illinois statutes. I can't emphasize enough, the Illinois Constitution says that for purposes of setting up our income tax statutes, we may bar the provisions of federal tax law, and that's exactly what the income tax does. And it does so with a pretty tight, if not, you know, ironclad grip saying, and the cases are consistent with this, you can't take one position with respect to your income on your federal income taxes and then take an inconsistent position with respect to your state income taxes. There's a year here where the actual records from the casinos that the Byrds frequented the most showed that they actually had more net income than net expenses. If, in fact, they were professional gamblers engaged in the trader business, they would have had self-withholding income that they had to pay on that. Now, their position is, oh, no, we have all sorts of losses that we can prove that we had at other gambling activities, but they don't have really tight records to show that's the case. They sort of, you know, throw it all up and say, look at how it lands, and in this confetti parade, you've got to believe us that we didn't make any money that year. But assuming they're not correct, they would have had federal self-withholding income if they were engaged in the trader business of gambling. Did they withhold? No, they didn't. Did they file those forms? No, they didn't. Did they report themselves as engaged in the trader business and run those numbers to determine whether they were responsible for self-withholding? No, they didn't. Again, our position is that this is largely a red herring, that the law in Illinois doesn't allow taxpayers to sort of do this after the fact. We'll figure out whether the position we took on our federal income tax returns was one that's favorable to us on our state income tax returns, and if so, we'll just take a different position for our Illinois taxes. And realize here, too, that they moved specifically to postpone the finality of the decision against them in this case so that they could seek an amendment of their federal tax status. And the administrative law judge said, I'm not going to say it, but if you get that, then you can petition to amend your Illinois income tax returns accordingly. That never happened. So we have followed faithfully what the statute provides. I think the constitutional arguments are adequately addressed in our briefing, unless the court has other questions. Just as an aside, the state makes money from licensing the gambling casino, local government units make a lot of money from the income that all these gambling places make, and then the people that are losing all this money, most of the professionals, really get hit by the income tax. Well, there's a fairness issue here that I understand, and it maybe has a little bit of traction. But realize, too, that the government can't be subsidizing hobbies. You can look at one factor or another factor and say, I enjoyed it, but that doesn't prevent it from being my business. Yes, but at some point you have to look at sort of the predominant purpose of what's going on. And if the predominant purpose is income-making activity, then fine, it falls into one category. If the predominant purpose is enjoyment and recreation, which is so often the case for many activities, including most gamblers, then it's a legitimate determination to say that we can't have a perfectly dovetailed, nuanced exactness of fairness in the tax code. You have to have some categorical rules that apply to broad groups of situations, and this is a legitimate one. And it's a legitimate one both as a matter of federal tax purposes and correspondingly given the way that our tax system works for state tax purposes. It's essentially, if you go to the track, there's a 17% essentially per mutual calculation of what goes to the house. Well, if for every take you got, you paid an extra 3% at that time, would people stop going? I doubt it. That's essentially what the Illinois Income Tax Act prescribes, and in this case, those taxes weren't paid. Thank you, Your Honors. Counsel? Your Honors, I do believe that the underlying theme on this issue is one of fairness, and with fairness comes the dovetailing into reasonableness, the reasonableness that's required for this taxation scheme to pass rational basis tests. It also dovetails into whether or not the taxation scheme is arbitrary or unreasonable. And just looking at what the department did when they received these reports that we tendered to them in discovery to go from $60,000 in purported tax liability to over $400,000 in purported tax liability, and the amended notices of deficiency shows the arbitrary ability for the government to apply this taxation scheme. And it does not rationally relate to any legitimate definition of income. It does not relate to any legitimate fairness principle that would say that individuals could lose $200,000 in a four-year period and owe $400,000 in income tax on those losses. It's that scheme that is unreasonable on the issue of the constitutionality. Yes, we did seek leave to amend the returns, and there's nothing that I've seen in any of the briefs or arguments that suggests that these taxpayers would not be able to amend at the federal level. You have a three-year period if you're seeking a refund, but they wouldn't be seeking a refund at the federal level to amend those returns. Was that argued at before the administrative judge? It was, Your Honor. And the amount of returns are part of the record? The returns are part of the record. But none of this matters at the federal level, because the federal level has changed from what Illinois has right now back in the late 70s when they instituted, I believe, Section 164D that allows people to take their gambling losses and deduct them from their gambling winnings. So Illinois is anything but a piggyback state that piggybacks off the federal return because the federal government presumably recognized the inherent unfairness in applying a situation where you can't deduct losses from gains and corrected that with 164D. Now, we are a state that I recall as a small child when my father would buy lottery tickets one time a week, pre-parented, 50-cent ticket. Now we are in a situation 40 years later where we have multiple tracks, and there were tracks back then, too, I don't want to suggest otherwise, but multiple tracks, multiple casinos. Right now in the Hopper in Springfield is licenses for five more, plus slot machines at the tracks. Somebody's going to lotto. It may as well be you. We hear that on the radio. Illinois is a state where gambling has exploded in the last 30 years. This taxation scheme needs to move in lockstep with the federal and recognize the inherent unfairness of taxing people who have lost $200,000 in this activity by as much as $400,000 in undeclared income taxes due in Owing. Had the administrative law judge found that the stipulated to authenticity and accuracy records of the casinos that show detailed, computerized printouts were in fact sufficient records. Now, counsel suggests that shopping bag records are somehow less records, but what we produce, first of all, shopping bag records aren't going to be kept from somebody who recognizes in their mind that this is nothing more than a hobby. Those records are kept and maintained for one reason and one reason only, and that's to show at the federal level, the state level, wherever we have to show it, that the losses far exceeded the gains that were obtained from this activity. There's nothing in the Constitution or anything suggesting that this court is bound by what was reported on the tax return because, again, Grossinger didn't file with the Schedule C and declare any of his gambling activities, yet the U.S. Supreme Court recognized that he met the qualifications for gambling as a trade or business. Without having filed the proper returns just like the Byrds did, without having it be a successful income just like the Byrds did not make any money off of this in the four-year period. And counsel also suggests and talks about, well, there would have been self-employment tax had they filed at the federal level as gamblers engaged in a trade or business, and I don't believe that that's accurate because the bottom line on each of these four tax years was losses exceeding gains. Had they filed at... I think he was talking about quarterly taxes. But those would only be due if there was, in fact, bottom-line accretion to wealth from the activity. So your position would be at no time did they show a profit? There were times where one of the two showed a profit, but the other one lost more than the profit the other one made. So at no time did they collectively show a profit? Right, and that would have been where... Was that testified to? It's demonstrated in the records that were submitted and stipulated to. And that's, again, where you get the $9.4 million circulated during the relevant tax years. Your Honor, let me ask this question. Sure. If the overall, after years of doing this, years and years of doing this, the overall result is a net loss, how can you, in just a common-sense understanding of trade or business, characterize it as a trade or business? The same way that people... But you're constantly losing at it, and you're living off of your other income, your full-time job. Because it's always pursued with a mind toward making a profit. Grossinger himself lost, yet was never the lucky. And the court specifically says, albeit unsuccessfully, he did it for profit, albeit unsuccessfully, still trade or business. A lot of people who are engaged in trades or businesses go bankrupt because they don't make money at it. That doesn't make it less of a trade or business. Day traders lost their shirts and are diving out of windows in the 90s when the dot-com crash occurred. But those people still would be able to deduct their expenses and losses from their gains because it is an activity that's engaged in as a trade or business, albeit in most situations, unsuccessfully. That's not the determinative factor. Back to Grossinger, the determinative factor is a holistic view of all of the totality of facts. And we believe, Your Honors, that it was clearly erroneous for the lower courts to not find that these taxpayers met those same standards the way Grossinger did under that analysis. And we respectfully ask for reversal and vacation of the notices of deficiency issued by the Illinois Department of Revenue. Thank you. The adjournment will be in recess.